IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIN GENERAL HOSPITAL, | No. C 07-1027 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| MODESTO & EMPIRE TRACTION COMPANY, et al., | |
| Defendants. | |

On May 4, 2007, the Court heard argument on defendants' motion to dismiss. For the reasons set forth below, the Court GRANTS defendants' motion and GRANTS plaintiff leave to amend the complaint to allege a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.

**BACKGROUND**

Plaintiff Marin General Hospital ("Marin") filed this action on December 8, 2006, in the Superior Court for the County of Marin. The complaint alleges claims for breach of implied contract, breach of oral contract, negligent misrepresentation, quantum meruit, and estoppel. On February 20, 2007, defendants removed this case to this Court on the ground that plaintiff's claims were preempted by ERISA.

According to the complaint, Marin is licensed by the State of California to conduct business as a healthcare provider. Complaint ¶ 1. Defendants are Modesto & Empire Traction Company ("Modesto"), a for profit corporation that provides self-funded medical insurance to its employees,

and/or officers and their dependants, *id.* ¶ 2; Medical Benefits Administrators of M.D., Inc. ("MBAMD"), a corporation that administers member benefit plans on behalf of employers that provide self-funded medical insurance, *id.* ¶ 3; and Ronald J. Wilson, the Chief Executive Officer and Chairman of MBAMD. *Id.* ¶ 4.

The complaint alleges that from April 19, 2004 to April 24, 2004, Marin provided medical treatment, a scheduled lumbar fusion procedure, for a patient, "S.M." *Id.* ¶¶ 13-14. The complaint also alleges that S.M. was covered under Modesto's self-funded health plan. *Id.* ¶ 15. Plaintiff alleges that prior to providing treatment to S.M., Marin contacted MBAMD and verified coverage for S.M., and that "in reliance on defendants' verbal statements of coverage and authorization for the treatment of patient S.M., [Marin] provided medical services, supplies, and/or equipment to patient S.M. with the understanding that defendants would pay [Marin] hospital bills at 90% of [Marin's] total billed charges for said services, supplies and/or equipment." *Id.* ¶¶ 17-19. Marin submitted a bill to defendants, of which defendants paid a portion. *Id.* ¶¶ 20-22. The complaint alleges that Marin has exhausted all of its administrative appeals. *Id.* ¶ 24. Marin seeks the balance of the total billed charges.

Defendants have submitted a copy of the Notice of Benefit Denial, dated June 8, 2004, which is addressed to Marin and states, *inter alia*,

> This letter responds to your claim for benefits under the group health plan named above. You submitted a claim for payment in the amount of $178,926.54. We have determined that this is a post-service claim. Under ERISA, the federal law that governs this plan, the plan administrator is required to administer the plan in accordance with its written provisions and terms, as interpreted by the plan administrator. We have carefully considered the information provided and applied the terms of the group health plan that apply to your request. For the reasons set forth below, we have determined that certain charges must be denied or partially denied. . . . The attached spreadsheet of the review details with particularity the charges that are being denied or partially denied due to apparent billing errors or overcharges exceeding this ERISA Plan's reasonable and customary guidelines.

Reply Ex. B. at 1. The Notice of Benefit Denial identifies specific additional documentation that Marin should submit in order to "perfect this claim for benefits." *Id.* at 2. The Notice also informed Marin that it had a right to appeal the denial, and explained the appeal procedures. *Id.* at 3-5.

Defendants have also submitted a copy of Marin's appeal, dated September 9, 2004. That appeal states:

> I am sending this appeal in regards to a claim that was not reimbursed at the proper

2

> hospital rates. Per your contract this claim should be paid at 90% of the total charges. Please review the contract between yourselves and Marin General Hospital and send your corrected reimbursement in a timely manner.

*Id*. Ex. C. Defendants' response to the appeal, dated December 8, 2004, states, *inter alia*,

> I am unaware of any contract between your facility and our Company which specifies that this, or any other claim, would be paid at 90% of total charges as you suggest in your letter. In fact, I am certain a contract between Marin General Hospital and Medical Benefits Administrators of MD, Inc. <u>does not</u> exist.

*Id*. Ex. D (emphasis in original). MBAMD denied Marin's appeal because Marin "failed to provide necessary information, documentation or evidence that warrants additional benefits reimbursement." *Id*. The December 8, 2004 letter concludes, "The administrative record is closed for further review and the determination is final and binding on all interested parties." *Id*.

Defendants have also submitted a copy of Marin's response to the appeal denial. That letter, stamped December 15, 2004, states,

> I am writing this letter in response to your recent denial. I was under the assumption you were contracted through Interplan. After reviewing your response I see that is not the case. As a non contracted Vender Marin General will not except [sic] any thing less than 100% of total billed charges. If your payment in full is not received Marin General will have no alternative but to bill the insured directly.

*Id*. Ex. F. By letter dated March 8, 2005, counsel for Marin wrote to MBAMD regarding Marin's claim:

> It is my understanding that Medical Benefits Administrators of Maryland ("MBA") has denied participation in Interplan contract that would have paid the above-referenced claim at 90% of total charges. Therefore, this non-contracted claim was owed full charges, or $178,926.54.

*Id*. Ex. E.

## LEGAL STANDARD

Title 28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where the action is pending." The Court determines the existence of federal question jurisdiction by examining plaintiff's complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In this action, defendants assert federal question jurisdiction under 28 U.S.C. § 1331, based on ERISA preemption. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal

3

1 procedure. *See* 28 U.S.C. § 1447(c).  The Court may remand sua sponte or on motion of a party, and
2 the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal
3 jurisdiction.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v.*
4 *Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); *Salveson v. Western States Bankcard Ass'n*, 525 F.
5 Supp. 566, 571 (N.D. Cal. 1981), *aff'd in part, rev'd in part*, 731 F.2d 1423 (9th Cir. 1984).

6 A "cause of action arises under federal law only when the plaintiff's well pleaded complaint
7 raises issues of federal law."  *Metropolitan Life Ins. Co v. Taylor*, 481 U.S. 58, 63 (1987).  However,
8 the Court may examine the entire record to determine if the real nature of the claim is federal,
9 notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading,"
10 attempted to defeat defendant's right to a federal forum.  *See Federated Dep't Stores, Inc. v. Moitie*, 452
11 U.S. 394, 397 n.2 (1981); *Salveson*, 525 F. Supp. at 572.  A complainant cannot "avoid federal
12 jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in
13 state law terms a claim that can be made only under federal law."  *Harper v. San Diego Transit Corp.*,
14 764 F.2d 663, 666 (9th Cir. 1985).

**DISCUSSION**

17 Defendants move to dismiss the complaint for lack of subject matter jurisdiction, arguing that
18 plaintiff's state law claims are preempted by ERISA, and that plaintiff has not alleged any claims under
19 ERISA.  Defendants argue that Marin could bring suit under ERISA as S.M.'s assignee, but that neither
20 the complaint nor plaintiff's opposition asserts that Marin is an assignee.  At the hearing, plaintiff's
21 counsel confirmed that Marin had received an assignment of benefits from S.M.  Defendants also argue
22 that plaintiff's state law claims are preempted by ERISA because Marin did not have a separate contract
23 with defendants, and because Marin's claim for unpaid benefits "relates to" S.M.'s ERISA plan.

24 Plaintiff contends that removal was improper because its claims are not preempted by ERISA,
25 and requests that the Court remand this case.  Plaintiff argues that Marin is not suing as an assignee of
26 S.M. to recover benefits under an ERISA plan, but rather as a third-party health care provider for
27 damages flowing from defendants' breach of the promise to pay for S.M.'s medical treatment.

28 ERISA preempts state law claims that "relate to" an employee benefit plan.  *See* 29 U.S.C. §

4

1144(a). A common law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such a plan." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). The Ninth Circuit has explained that common law claims do not "relate to" an ERISA plan when the "adjudication of the claim required no interpretation of the plan, no distribution of benefits, and no dispute regarding any benefits previously paid." *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005); *see, e.g.*, *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937-39 (9th Cir. 2003) (no ERISA preemption because there was no ERISA plan); *Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027-29 (9th Cir. 1995) (no ERISA preemption because plaintiff never became eligible to receive benefits under the plan). In contrast, where a claim requires interpretation of an ERISA plan or law, ERISA preemption exists. *See Peralta*, 419 F.3d at 1069. Plaintiff can only escape ERISA preemption if Marin can either identify a separate contract between the parties, or allege a specific misrepresentation that would not require interpreting S.M.'s ERISA plan and would not affect the relationships between ERISA participants. *See Geweke Ford v. St. Joseph's Omni Pref. Care Inc.*, 130 F.3d 1355, 1358 (9th Cir. 1997).

Here, there is no dispute that S.M.'s insurance plan is an employee benefit plan under ERISA. S.M. assigned her benefits to Marin, and Marin billed defendants pursuant to that assignment. Based upon the assignment, plaintiff could pursue an action under ERISA. *See Misic v. Building Service Employees*, 789 F.2d 1374, 1379 (9th Cir. 1986) (per curiam). Plaintiff attempts to avoid ERISA preemption by alleging the creation of an implied and oral contract between the parties when the hospital verified coverage prior to providing treatment. *See* Complaint ¶¶ 30, 39, 44.

Although there is no Ninth Circuit authority on point, *The Meadows v. Employers Health Insurance*, 47 F.3d 1006 (9th Cir. 1995), is instructive. In *The Meadows*, a health care provider filed claims for negligent misrepresentation, estoppel, and breach of contract against an insurance company. The health care provider claimed that the insurance company refused to pay expenses associated with two patients' care, despite representing to the provider that the patients were covered by insurance. The Ninth Circuit held that ERISA did not preempt these claims because the health care provider did not sue as an assignee of an ERISA beneficiary, but as an independent entity claiming damages. *Id.* at 1008. Significantly, during the time period covered by the complaint, the patients were not actually covered

by defendant's insurance plan. "We hold that the district court correctly concluded that the independent state law claims of The Meadows, a third-party provider, lie outside the bounds of the ERISA 'relates to' standard *because neither The Meadows nor the Friedels had any existing ties to the ERISA plan in 1990*." *Id*. at 1009 (emphasis added); *see also Cypress Fairbanks Med. Ctr. v. Pan American Life Ins.*, 110 F.3d 280, 284 (5th Cir. 1997) ("ERISA does not preempt a third-party provider's state-law claims if that third party's claim is premised on a finding that the beneficiary is not covered at all by an existing ERISA plan."); *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990) (same).[1]

Plaintiff relies on *Hoag Memorial Hospital v. Managed Care Administrators*, 820 F. Supp. 1232 (C.D. Cal. 1993).[2] In *Hoag*, a hospital admitted a patient who had been involved in a serious automobile accident, and verified coverage prior to providing treatment. The complaint alleged that the defendants assured the hospital that the patient was covered and that the hospital would receive the policy benefits. *Id*. at 1233. The complaint also alleged that the defendants never informed the hospital that the patient's right to receive benefits was subject to forfeiture or reduction, that coverage was contingent upon further investigation of facts, or that the defendants would conduct a post-claim investigation to determine the availability of benefits. The defendants later completely denied coverage based on a benefit exclusion. *Id*. at 1234. The district court found that the hospital's claims for fraud, misrepresentation and estoppel were not preempted by ERISA because the hospital's claims were based on the defendants' misrepresentation that the claim would be covered. Noting that there was no Ninth Circuit authority of point, the *Hoag* court found persuasive the reasoning of cases such as *Memorial Hospital System*, *supra*, where courts found no ERISA preemption when a defendant falsely represented coverage when in fact

---

[1] Contrary to plaintiff's description of *Memorial Hospital System*, that case did not involve a patient who was a member of an ERISA plan at the time of treatment. In *Memorial Hospital System*, although the patient was not covered by an ERISA plan at the time of treatment, the defendants verified coverage when the hospital contacted the defendants prior to providing treatment. As the Fifth Circuit stated in holding that the hospital's state law claim for unfair and deceptive trade practices was not preempted by ERISA, "A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." *Id*. at 246.

[2] The Court notes that plaintiff incorrectly, and repeatedly, refers to *Hoag* as a Ninth Circuit decision.

6

the patient was not covered by an ERISA plan.

Here, unlike *The Meadows* or *Memorial Hospital Systems*, S.M. was covered by an ERISA plan at the time of treatment. S.M. assigned her ERISA benefits to Marin, Marin billed defendants pursuant to that assignment, defendants partially paid Marin's bill under the terms of S.M.'s ERISA plan, and Marin filed an administrative appeal as an assignee. Thus, while the plaintiffs' claims in *The Meadows* and *Memorial Hospital Systems* did not "relate to" an ERISA plan, Marin's claims are intertwined with S.M.'s ERISA plan, and S.M.'s assignment of ERISA benefits to Marin. Further, unlike *Hoag*, where the defendants allegedly misrepresented that the hospital would be paid and then completely denied coverage, here plaintiff received partial payment in accordance with the terms of S.M.'s ERISA plan (and presumably could have sought additional payments had further documentation been provided).[3] In order to evaluate plaintiff's claims that it should have been fully paid, the Court will necessarily be required to examine the provisions of S.M.'s plan.

The Court also notes that to find otherwise would undermine the policies underlying ERISA. If, under the facts presented here, a health care provider could avoid ERISA preemption – despite having received an assignment of ERISA benefits, being partially paid under an ERISA plan, and after having filed an ERISA appeal – ERISA plans would be reluctant ever to orally confirm coverage, and health care providers would have few incentives to investigate the scope of a patient's coverage before providing treatment.

///

---

[3] To the extent that *Hoag* holds that ERISA does not preempt state law claims in a situation such as the instant case, where a hospital receives an assignment of ERISA benefits and is partially paid for its services pursuant to that assignment, the Court respectfully disagrees with *Hoag*. The parties did not cite any on point Ninth Circuit cases, and the Court was unable to locate any such authority. The Court is aware that *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefit Plan*, C 06-1741 SI, which is currently on appeal in the Ninth Circuit, presents a similar question regarding the scope of ERISA preemption.

**CONCLUSION**

For the foregoing reasons and good cause shown, the Court hereby GRANTS defendants' motion to dismiss, and GRANTS plaintiff leave to amend to allege a claim under ERISA. (Docket No.4). If plaintiff wishes to file an amended complaint, plaintiff must do so no later than **May 18, 2007**.

**IT IS SO ORDERED.**

Dated: May 9, 2007

SUSAN ILLSTON
United States District Judge